IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| MICHAEL DUANE WATTS, | : | |
| Plaintiff, | : | |
| v. | : | No. 5:10-CV-448 (CAR) |
| TAYLOR, BEAN & WHITAKER MORTGAGE CORP. & OCWEN LOAN SERVICING LLC, | : | |
| Defendants. | : | |

**ORDER IMPOSING SANCTIONS**

This is an order to impose sanctions on Plaintiff Michael Duane Watts based on his bad faith conduct in continuing to file baseless, frivolous complaints on the matter at hand despite the Court's prior warnings.

Watts is no stranger to this Court, having filed three cases in the past two years regarding his mortgage and the foreclosure on his home that have made their way before this Court.

In August 2009, Watts filed a complaint against Ocwen Loan Servicing and Taylor Bean & Whitaker Mortgage Corporation, Case No. 5:09-CV-295, accusing Taylor Bean of fraud and alleging violations of the National Bank Act and 18 U.S.C. §§ 655, 656, and 657. Defendants in that case filed a motion to dismiss. Watts did not oppose that motion. Instead, Watts filed a notice of voluntary dismissal, and the case was terminated.

In June 2010, Watts filed another complaint against Ocwen Loan Servicing, Case No. 5:10-CV-238, alleging that Ocwen violated the Truth In Lending Act and engaged in various

1

other predatory lending practices in violation of the law. In connection with that complaint, Watts also sought a temporary injunction directed against the foreclosure on his property, which had already occurred. The Court held a hearing on Watts's request for a preliminary injunction. During that hearing, the Court strongly admonished Watts regarding the frivolous nature of his claims. The Court gave the following specific warnings:

> And I'm going to warn you now, very clearly, you have filed a number of lawsuits and taken legal action. From this point forward if I find that you did anything, brought any kind of action in the future then I'm going to bring you back in here, under a show cause order, and I am going to sanction you, which means I am going to impose a money damage against you. You are going to have to pay money to the Court. It will be a penalty.
>
> . . . .
>
> What I'm telling you is if you do anything else in this Court and I find that it is frivolous or done in bad faith for no necessary purpose you are very likely to get fined, sanctioned by the Court. All right? Now, it's fine for you to protect your rights. This to me looks very frivolous from the very beginning. And I am warning you that you had better be careful about what you file again in my Court. Do you understand that?
>
> . . . .
>
> I'm talking about what's going to happen to you in the future if you file anything else in my Court that is frivolous, that has no basis in the law and fact. I've already warned you about the theories that you have brought before me today. Do you understand now what I'm saying?
>
> . . . .
>
> I think you understand well enough what I'm talking about and it's not going to be a defense to a show cause motion if you say I didn't understand it, because I have tried to explain it to you in every way that I can and I have explained it to you several times.

[No. 5:10-cv-238, Doc. 13]. The Court denied Watts's request for a temporary injunction, and ordered Watts to show cause why his complaint should not be dismissed with prejudice. After Watts filed an unpersuasive response the Court's show cause order, that case was dismissed with prejudice. In the Order dismissing the case, the Court again cautioned Watts:

> Plaintiff's Complaint fails to allege any wrongful conduct on the part of the Defendants. Instead, it appears to be nothing more than an attempt to use frivolous and abusive litigation to forestall a lawful foreclosure so that Plaintiff can continue to live in a house that he has occupied, rent-free, for twenty-two months. He has been warned that future attempts to use this Court and its process for such purposes may result in sanctions under Rule 11 of the Federal Rules of Civil Procedure.

[Case No. 5:10-cv-238, Doc. 9].

Finally, in October 2010, just five months after the hearing in Watts's previous case, Watts filed suit against Ocwen Loan Servicing and Taylor Bean in the Superior Court of Jones County, Georgia. Defendants filed a notice of removal, bringing the matter before this Court, Case No. 5:10-CV-448. Watts continued to challenge the Defendants' handling of his mortgage note and foreclosure on the property. In his complaint, Watts alleged that the Jones County Magistrate Court was without jurisdiction to issue a writ of possession on the property, that Defendants violated the National Currency Act and the due process guarantee of the Georgia Constitution, and that his obligation under the mortgage note was discharged based on various Georgia statutes relating to negotiable instruments, including O.C.G.A. §§ 11-3-302, 11-3-305, 11-3-407, and 11-3-604.

In addition to filing a motion to dismiss, Defendant also requested Rule 11 sanctions be imposed against Watts. On February 18, 2011, the Court issued an Order to Show Cause, directing Watts to appear at a hearing scheduled for February 28, 2011, and show cause as to why he should not be sanctioned for filing another frivolous complaint on the same subject matter covered by the previous cases. Watts disregarded that Order and did not appear at the scheduled hearing.

After Watts did not appear at the February 28 hearing, the Court scheduled another hearing on the matter to be held on March 24, 2011. Watts did appear at this hearing. Prior to

the hearing, Watts filed a number of documents of little relevance to the matter. The bulk of the filings were either recycled arguments about the merits, such as they were, of his claims or copies of previous state court filings related to these matters. Watts did advance one contention relevant to this matter: That he did not disobey the Court's order not to execute any further filings or cases in this Court because he filed this particular action in state court, and it was removed to federal court by Defendants. At the hearing, Watts failed to advance any argument regarding the frivolous nature of the complaint he filed in this case. Instead, in one of his clearer statements Watts maintained that he was in court that day in regards to the settlement of a trust account relating to the corporate entity described as MICHAEL DUANE WATTS to which he had appointed the Court to act as a fiduciary. In short, Watts was non-responsive as to why he should not be sanctioned for filing his frivolous complaint.

Rule 11 of the Federal Rules of Civil Procedure authorizes a district court to sanction a party if the party's representations to the court do not meet certain standards. Fed. R. Civ. P. 11(c). Specifically, Rule 11(b) states that by presenting a pleading to the court, a party certifies "to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances" that the pleading is not presented "for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation" and that its "claims . . . and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(b).

In addition, district courts possess the inherent power to impose sanctions when a party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." Byrne v. Nezhat, 261 F.3d 1075, 1106 (internal quotation marks omitted). Courts may invoke this power even if

4

procedural rules govern the same conduct.  Id.  A party acts in bad faith when it "knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent."  Id. at 1121 (internal quotation marks omitted).

The Court finds that Watts's conduct justifies sanctions both under Rule 11 and the Court's inherent power to sanction bad faith behavior.  As set forth extensively above, the Court warned Watts of the frivolous nature of his complaint – both in regards to the facts underlying his claims and his legal contentions – in the prior case No. 5:10-CV-238, and of the likely repercussions if he persisted in filing such complaints in this Court.  In response, Watts filed another complaint, albeit in the Superior Court of Jones County, advancing even more outlandish legal propositions than he had previously marshaled.

He argued that the Jones County Magistrate Court violated the Georgia Constitution when it ordered a writ of possession on his foreclosed home.  Georgia Magistrate Courts exercise the authority to order writs of possession every day.  See, e.g., Shola v. Lochard, 289 Ga. App. 275 (2008); see also O.C.G.A. § 44-14-231.  Watts produced no authority for the proposition that ordering a writ of possession is a case within the exclusive jurisdiction of Georgia Superior Courts as a case respecting title to land.  See Ga. Const. Art. 6, § 4, ¶ 1.  Indeed, thirty years ago the Georgia Supreme Court held that "cases respecting title to land" refers to cases in which the plaintiff asserts his title to the land in question and depends on the maintenance of that title in order to recover.  Ingold, Inc. v. Adair, 247 Ga. 155 (1981).

Watts's additional arguments were even more frivolous.  He argued that his obligation under the mortgage note was discharged under several sections of the Georgia Code that provide for discharge of an instrument through intentional acts of cancellation or the addition of words indicating discharge.  He argued that because his original mortgage note was stamped "Pay to

5

Order of **** Without Recourse" at some point when it was transferred between institutions, that stamp necessarily indicated the discharge of a debt on which he never made a single payment. Finally, he advanced a nonsensical argument based on the National Currency Act of 1863 that is nearly impossible to analyze.

The Court is normally lenient towards pro se plaintiffs and their pleadings. Our legal system is at times difficult to navigate, and all parties, including pro se parties, should have a fair opportunity to bring legitimate claims for redress before the Court. In Watts's case, however, the time for leniency is over. The Court warned Watts that his already transparent attempt to forestall the foreclosure on his home after his failure to make a single payment on his mortgage for over two years was frivolous. If Watts disagreed with the Court's ruling in his previous case, his avenue for redress was to appeal this Court's order to the Eleventh Circuit. Instead, he filed a new complaint based on theories more frivolous than the prior ones. In light the Court's previous warnings regarding this behavior, the only reasonable conclusions are that Watts acted in bad faith by "knowingly or recklessly rais[ing] a frivolous argument," Byrne, 261 F.3d at 1121; that his pleading was presented "to harass [the defendants], cause unnecessary delay, or needlessly increase the cost of litigation," Fed R. Civ. P. 11(b); and that his "claims . . . and other legal contentions are [not] warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Id. Accordingly, the Court finds that Watts's conduct justifies sanctions both under Rule 11 and the Court's inherent power to sanction bad faith behavior.

The Court held a hearing on March 24, 2011, to provide Watts with the opportunity to

6

advance any argument as to why his conduct was not sanctionable.[1] The closest Watts came to advancing such an argument was to point out that he had not filed his latest complaint in this Court but instead Defendants had removed the case from the Superior Court of Jones County. First, the Court's power to sanction Watts under Rule 11 and its inherent power is not a function of where this case was filed. Second, in the prior case the Court clearly warned Watts against frivolous filings both in this Court and in any court. Perhaps the most stern warning was directed to filing further complaints in this Court, but the Court clearly warned Watts of the repercussions of any frivolous filings. Beyond that argument, Watts's responses were quasi-legal nonsense. His overall theme seemed to be that he was in court that day to discuss the settlement of a trust account relating to the corporate entity described as MICHAEL DUANE WATTS to which he had appointed the Court to act as a fiduciary.

At the hearing, the Court announced its intention to sanction Watts for filing and maintaining a frivolous complaint in this case. Specifically, the Court announced its intention to sanction Watts both for the amount of Defendant's attorneys' fees in responding to his Complaint and an additional $5,000. Having received and considered Defendant's submissions regarding attorneys' fees, the Court will hold to its previous course. The Court will first discuss Defendant's attorneys' fees. Then, the Court will explain why it finds that attorneys' fees alone are insufficient to deter Watts from future violations of Rule 11 and other bad faith conduct.

Defendant's counsel filed a submission showing that Defendant's had incurred $5,273.38 in total attorneys' fees and costs related to this case [Doc. 25]. Defendant's counsel filed an affidavit setting forth both her qualifications and the qualifications of the associate that assisted

---

[1] The Court also afforded Watts the opportunity to file any written submissions on the issue.

her on the case and the hours both of them spent on the case. Defendant's counsel also provided an affidavit of another attorney, Lamar Sizemore Jr., attesting to the customary fees charged for this type of work in the relevant legal community.

The starting point, and in this case the ending point, for determining the value of a lawyer's services it to multiply the hours reasonably expended on the litigation by a reasonable hourly rate. Norman v. Housing Auth. of City of Montgomery, 836 F.2d 1292, 1299 (11th Cir. 1988). Defendant's counsel, Sarah Akins, states that her standard rate for this type of matter is $250 per hour, and that the standard rate of her associate, Megan Manly, is $125 per hour. In his affidavit, Mr. Sizemore stated that both of those rates were reasonable within the Middle District of Georgia for lawyers of that experience handling this type of matter. Based on its own knowledge of the local market, id. at 1304, the Court agrees. Counsel's submission also shows that Ms. Akins expended 12.5 hours on this litigation and that Ms. Manly expended 13.9 hours on this litigation. The Court finds the expenditure of that time to be reasonable. Based on the number of hours expended and the reasonable hourly rates set forth above, the total attorneys' fees in this case are $4,862.50. In addition, Defendant incurred $410.88 in costs, predominantly the $350 filing fee upon removal. In total, Defendants incurred $5,273.38 in attorneys' fees and costs.

The Court provided Watts with the opportunity to respond to and dispute defense counsel's submission. Watts chose not to do so. Instead, he filed another nonsensical document he titled an "Affidavit of Truth" [Doc. 27], consisting of a three-page UCC Financing Statement that lists "*MICHAEL DUANE WATTS*," care of "East Orange Hospital, 36 Rhode Island Avenue, East Orange, New Jersey," and "MICHAEL D WATTS," care of "Social Security Administration, Baltimore, Maryland," as debtors and "-Michael ;D :Watts," care of "[667]

Altman Road (w/o District of Columbia), near: Gray, Georgia," as the secured party. Watts clearly received defense counsel's submission because he attached it as an exhibit to his "Affidavit of Truth." Having determined that Defendant's submission is reasonable, the Court **ORDERS** that Watts pay Defendant $5,273.38 in attorneys' fees and costs.

Under normal circumstances, a $5,273.38 sanction might be sufficient to deter a <u>pro se</u> plaintiff from persisting in violating Rule 11 and engaging in bad faith behavior. This, however, is not a normal circumstance. Watts has shown a marked determination in continuing to pursue frivolous complaints in this matter. Sums in the hundreds of dollars are obviously not a deterrent; he was more than willing to pay the $350 filing fee in his previous case, No. 05:10-CV-238, and the applicable state court filing fee in this case in order to pursue his claims. Moreover, Watts's intransigence in employing off-the-wall, quasi-legal jargon in his filings and hearings before the Court shows no signs of abating. The Court is quite certain that unless a hefty sanction is levied against Watts, another complaint will follow, and that complaint will be littered with even more incomprehensible and frivolous theories taken from whatever bottomless source Watts has identified for his legal arguments, such as they are.

The Court is certain of this because it already happened once. Watts was clearly warned in his previous case. He returned with more of the same in this case. Given the chance to explain himself, he refused to engage in a meaningful discourse. Instead, he littered the Court with more nonsensical filings that, among other things, appear to be based on the premise that he can remove and insulate himself from the legal process simply by attaching citations to the Uniform Commercial Code to his name or invoking other quasi-legal incantations. [<u>See</u> Docs. 20, 22, 27, 29, 30]. His previous actions make clear that Watts will continue to attempt to abuse this Court's process and power in order to harass other parties, while showing no respect for the

9

proper workings of the legal system. He will happily attempt to invoke the Court's authority over others, while hiding from the concomitant authority the Court may exercise over him once he voluntarily attempts to invoke that power. For all those reasons, the Court has determined that simply sanctioning Watts in the amount of Defendant's attorneys' fees will not be sufficient to deter his bad faith conduct. As a result, the Court **ORDERS** Watts to pay an additional $5,000.

In determining the appropriate sanctions in this case, the Court was mindful of its obligation to inquire into Watts's financial condition. See Baker v. Alderman, 158 F.3d 516, 529 (11th Cir. 1998) ("We . . . hold that a district court must consider financial ability in the award of sanctions."). In order to fulfill that duty, the Court instructed Watts to complete and file a Financial Disclosure Affidavit. [See Doc. 26]. Watts did not respond. The Court then issued a Show Cause Order, again instructing Watts to complete and file the affidavit. [See Doc. 28]. The Court also warned Watts that failure to complete and file the affidavit would result in the Court presuming that the affidavit would disclose an ability to pay the proposed sanctions. [Id.]. Watts responded to that Order. Of course, he did so in the same manner that he has responded to every other order of this Court in this case. He first filed a twelve page document titled "Affidavit: Cease and Desist/Revocation of Power of Attorney/Revocation and Recission on Real Property-Held in Escrow by Counsel, Under Duress." [Doc. 29]. Those twelve pages are filled with what appears to be, based on the Court's own research, various provisions of Chapter 67 of Title 15 of the South Carolina Code of Laws, dealing with recovery of real property. He also filed a four page document titled "Affidavit: Conditional Letter of Acceptance." [Doc. 30]. The contents of this document are difficult to comprehend. The crux of it, in Watts's words, is that document is his "timely response to your letter and summons for garnishment and it has

come to my attentions that as applied to the above matter, that there may not have been a true qualified 'meeting of the mind,' that there may be fraud or misrepresentation on the contract and/or the contract itself may be an unconscionable contract, or other controversies that may exist within this contract/transaction." As a result, Watts requests a "Proof of Claim" from the Defendant, Defendant's counsel, or the Court relating to various matters. In short, Watts refused to comply with the Court's simple directive to complete the form. As promised in the Show Cause Order, the Court will presume that Watts has the financial ability to pay the sanctions set forth in this Order.

For the foregoing reasons, the Court **ORDERS** Watts to pay $10,273.38 – $5,273.38 in attorneys' fees and costs and an additional $5,000 – as a sanction for his violations of Rule 11 and his bad faith conduct.[2]

SO ORDERED this 1st day of July, 2011.

                                                S/ C. Ashley Royal
                                                C. ASHLEY ROYAL, JUDGE
                                                UNITED STATES DISTRICT COURT

bcw

---

[2] At the March 24 show cause hearing, the Court announced its intention to levy an additional sanction against Watts for his failure to appear at the February 28 show cause hearing. Having considered the matter further, the Court has decided that an additional sanction for Watts's failure to appear is not necessary at this time.